UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| PATRICIA A. BECKER | * |
|           Plaintiff | * CIVIL ACTION NO. _____ |
| | * |
| VERSUS | * SECTION: _____ |
| | * |
| | * DISTRICT JUDGE: _____ |
| | * MAG. JUDGE: _____ |
| TAYLOR- SEIDENBACH, INC.; HUNTINGTON INGALLS INC., f/k/a AVONDALE INDUSTRIES INC.; ALBERT BOSSIER, UNDERWRITERS AT LLOYD'S LONDON, as the liability insurer of the following Executive Officers of Avondale Industries, Inc.: James Bull, John David Roberts, Steve Kennedy, John Chantrey, Ollie Gatlin, James Melton Garrett, Earl Spooner, Albert Bossier, C. Edwin Hartzman, John McQue, Burnette "Frenchy" Bordelon, Henry "Zac" Carter, James T. Cole, Eddie Blanchard, Hettie Margaret Dawes-Eaves, James O'Donnell, George Kelmell, Ewing Moore, Pete Territo, and J.D. Roberts; J.D. ROBERTS; TRAVELERS IDEMNITY COMPANY, as the liability insurer of the following Executive Officers of Avondale Industries, Inc.: James Bull, John David Roberts, Steve Kennedy, John Chantrey, Ollie Gatlin, James Melton Garrett, Earl Spooner, Albert Bossier, C. Edwin Hartzman, John McQue, Burnette "Frenchy" Bordelon, Henry "Zac" Carter, James T. Cole, Eddie Blanchard, Hettie Margaret Dawes-Eaves, James O'Donnell, George Kelmell, Ewing Moore, Pete Territo, and J.D. Roberts; CHEVRON PHILLIPS CHEMICAL COMPANY LP; EAGLE, INC. f/k/a Eagle Asbestos & Packing Co. and Eagle Packing & Equipment Co.; ANCO INSULATIONS, INC.; | * |
|           Defendants | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes defendant, Huntington Ingalls Incorporated, f/k/a Northrop Grumman Ship Systems, Inc., f/k/a Avondale Industries, Inc.

00891184

(hereinafter "Avondale"), who, pursuant to 28 U.S.C. §§ 1441, 1442, and 1446, notices the removal of the above-entitled action bearing No. 2023-11053 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana (the "State Case"), to the United States District Court for the Eastern District of Louisiana.

1.

This Court has subject matter jurisdiction because the State Case is an action for or relating to conduct under color of federal office commenced in a state court against persons acting under one or more federal officers within the meaning of 28 U.S.C. § 1442(a)(1).

2.

Venue is proper in this Court because it is the district court for the district in which the State Case is pending.  28 U.S.C. § 1442(a).

3.

On September 26, 2023, Plaintiff, Patricia A. Becker, filed a Petition for Damages in the suit bearing Case No. 2023-11053 in Civil District Court for the Parish of Orleans, naming Avondale as a defendant.[1] The Petition alleges that Ms. Becker was diagnosed with lung cancer as a result of exposure to asbestos from the clothes of her ex-husbands, Don Turbeville and Warren Terrebonne, from 1971 to 1981, and from her brothers, Herman, Alan, and Gary Becker, while they worked at Avondale throughout the 1960s and 1970s.[2] Plaintiff alleges that her ex-husbands and her brothers used asbestos containing materials and worked in the vicinity of others using asbestos containing materials and dust from those materials were brought home on their clothes and subsequently exposed her to asbestos.[3]

---

[1] Exhibit A, Petition for Damages.
[2] *Id*. at ¶¶ 4, 5, 6, and 7.
[3] *Id.* at ¶¶ 8-9.

4.

The Petition alleges that Avondale had the obligation to comply with the standards related to asbestos set forth specifically by the Walsh Healey Public Contracts Act ("Walsh Healey Act").[4] The Petition further alleges that Avondale failed to provide Ms. Becker's husbands and brothers with a safe premises by "failing to abide by applicable… federal regulations regulating the premises' exposure to asbestos, including… those regulations promulgated by the U.S. Department of Labor, pursuant to the Walsh/Healy Act…"[5] Accordingly, Plaintiff contends that that, due to Avondale failing to comply with the Walsh Healey Act, Ms. Becker was exposed to asbestos which caused her lung cancer.

5.

The Walsh Healey Act applies to U.S. government contracts with private entities exceeding $10,000.00 for the manufacturing or furnishing of goods. Through the Walsh Healey Act, the federal government issued advisories to government contractors, like Avondale, regarding asbestos and safety standards related to the levels of permissible asbestos exposure. The only federal contracts that Avondale had in the 1960s and 1970s while the Walsh Healey Act was in effect, and thus the only contracts subjecting Avondale to the requirements of the Walsh Healey Act, were contracts between Avondale and the United States to build different types of Federal Vessels. The contracts Avondale had with the United States expressly incorporated the requirements of Walsh Healey at the time they were signed.

6.

During the relevant period, Avondale was constructing vessels built pursuant to contracts with the United States Navy, United States Coast Guard, and the United States Maritime

---

[4] *Id.* ¶ 29(I).
[5] *Id.* ¶ 30(I).

Administration ("MARAD"). During the relevant time period when Walsh Healey was in effect, at least 97 vessels, approximately 89% of all vessels under construction, were built pursuant to contracts with the federal government that incorporated the requirements of the Walsh Healey Act. These vessels included U.S. Navy Destroyer Escorts, U.S. Coast Guard Cutters, and Lykes vessels and LASH cargo vessels constructed for MARAD (collectively, the "Federal Vessels"). These vessels were built with asbestos-containing products and materials pursuant to the Navy's, Coast Guard's, and MARAD's requirements and terms of the contracts. Thus, to the extent that Plaintiff is alleging violations of the Walsh Healey Act caused her exposure to asbestos-containing materials from Avondale during this time, such exposure is necessarily attributable to asbestos-containing materials required and destined for use in the construction of these U.S. Navy, U.S. Coast Guard, and MARAD vessels pursuant to the contracts Avondale held with the United States government.

7.

These Federal Vessels were built with asbestos-containing products and materials pursuant to the U.S. Government's requirements. Thus, to the extent Plaintiff is alleging she was exposed to asbestos from asbestos-containing products from Avondale during this time, such exposure is necessarily attributable to asbestos-containing products required and destined for use in the construction of these Federal Vessels.

8.

Thus, Plaintiff's Petition reveals on its face that she is claiming that her exposure to asbestos from Avondale is attributable, in part, to asbestos used and installed on Federal Vessels at Avondale, pursuant to Avondale's contracts with the federal government. *See, e.g., Bourgeois v. Huntington Ingalls, Inc.,* No. 20-1002, 2020 WL 2488026 at *10 (E.D. La. May 14, 2020)

("Under the broad reading of 'relating to' *Latiolais* dictates, … the evidence that six Navy vessels were under construction while Bourgeois worked at Avondale, tend to show that Bourgeois was likely exposed to asbestos used under the direction of a federal officer, thereby satisfying the connection prong") (Ashe, J.); *Ragusa v. Louisiana Insurance Guaranty Association,* 573 F.Supp.3d 1046, 1052 (E.D. La. Nov. 23, 2021) ("Under the broad reading of the connection prong, the evidence that at least two federal vessels were under construction during the time of the alleged exposure tends to show that Plaintiff was likely exposed to asbestos being used under the direction of a federal officer") (Barbier, J.).

9.

This removal is being filed on November 16, 2023, within thirty (30) days of service of Plaintiffs' Original Petition for Damages on Avondale on October 17, 2023.[6]

10.

This action involves persons acting under the authority of an officer of the United States within the meaning of 28 U.S.C. § 1442(a)(1). To establish jurisdiction under this statute, a defendant must show: (1) it has asserted a colorable federal defense, (2) it is a "person" within the meaning of the statute, (3) that has acted pursuant to a federal officer's directions, and (4) the charged conduct is related to an act pursuant to a federal officer's directions. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 296 (5th Cir. 2020) (*en banc*).

11.

Avondale is a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *See Savoie v. Huntington Ingalls Incorporated,* 817 F.3d 457, 461 (5th Cir. 2016).

---

[6] *See* Exhibit A.

12.

Avondale was "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when it built the above-mentioned Federal Vessels, including U.S. Navy Destroyer Escorts and U.S. Coast Guard Cutters, for the United States government because the United States government contracted with Avondale to perform a task that the federal government otherwise would itself have had to perform—namely, to build ships "used to help conduct a war," for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other national interests. *E.g.*, *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153-54 (2007); *Savoie,* 817 F.3d at 461-62 (Avondale was acting under a federal officer in the construction of vessels for the United States Navy); *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the United States Maritime Administration); *Dempster v. Lamorak Ins. Co.*, No. 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

13.

Avondale was also "acting under" an "officer … of the United States or [an] agency thereof" within the meaning of § 1442(a)(1) when it built the Lykes and LASH cargo vessels pursuant to contracts with MARAD because the United States government, acting through MARAD, had contracted with Avondale to perform a task that the government otherwise would itself have had to perform – to build ships for use as naval and military auxiliaries, to promote foreign and domestic commerce, and to further other important national interests. *Wilde v. Huntington Ingalls, Inc.*, 616 F. App'x 710, 713 (5th Cir. 2015) (Avondale was acting under a federal officer in the construction of vessels for the United States Maritime Administration);

*Dempster v. Lamorak Ins. Co.*, No. CV 20-95, 2020 WL 468611, at *11 (E.D. La. Jan. 28, 2020) (same).

14.

If Patricia Becker was exposed to asbestos from her husbands' and brothers' work at Avondale in conjunction with the construction of the Federal Vessels in violation of Walsh Healey's asbestos standards as alleged, the use of asbestos-containing materials on those vessels was required, controlled, and/or authorized by officers of the United States.

15.

Plaintiff's claims against Avondale are claims "for or related to" acts performed under color of federal office within the meaning of the text of 28 U.S.C. § 1442(a)(1) because the charged conduct is "connected or associated with" an act under a federal officer's direction. *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d at 296.

16.

The use and installation of asbestos-containing materials in the construction of Federal Vessels was required by the contractual provisions and design specifications mandated by the United States government.

17.

The materials used in the construction of the Federal Vessels—including asbestos-containing materials—were the kind, type, and brand of materials specifically mandated by the vessel construction contracts between Avondale and the United States government, and by the incorporated drawings, plans and specifications for the construction of the Federal Vessels.

18.

The shipbuilding process—specifically including the use and installation of asbestos-containing materials aboard the Federal Vessels—was supervised and monitored by inspectors and other representatives of the United States government to ensure that Avondale complied with the design specifications mandated by the U.S. Navy, the U.S. Coast Guard, and MARAD.

19.

The inspections by representatives of the United States government included a determination that the supplies (including raw materials, components, and end products) used in the construction of the Federal Vessels were the supplies required by the contracts and specifications, including asbestos-containing materials. Inspections occurred throughout construction and prior to final acceptance of the Federal Vessels. If Avondale did not use the supplies required by the contracts, including asbestos-containing materials, the federal government could demand that Avondale replace the supplies with conforming materials and/or put Avondale in default of contract.

20.

The United States government required Avondale to provide representatives of the United States government, including government inspectors, with office space and other attendant facilities within the shipyard.

21.

Extensive Dock Trials, Builder's Trials, and Sea Trials on the Federal Vessels were performed by representatives of the United Sates government prior to the commission of each Federal Vessel to ensure conformity with the design specifications mandated by the United States government.

22.

The United States government also promulgated specific safety rules, regulations, and requirements for shipbuilding. These regulations included specific permissible safe exposure levels for asbestos pursuant to the Walsh Healey Public Contracts Act, the Occupational Health and Safety Act, and the United States Department of Labor Safety and Health Regulations for Shipbuilding (29 C.F.R. § 1502.1), which set safety standards to meet the provisions of the Longshore and Harbor Workers' Compensation Act requirements to render Avondale's workplace safe pursuant to 33 U.S.C. § 941. Avondale was guided by and required to comply with these safety regulations during construction of the Federal Vessels. Federal safety inspectors specifically monitored and enforced these safety regulations as well as the construction of the Federal Vessels on a day-to-day and job-specific basis.

23.

Avondale raises two colorable federal defenses to one or more of Plaintiff's claims in this action. First, one or more of Plaintiff's claims are barred under the jurisprudential doctrine of government contractor immunity established by *Boyle v. United Techs. Corp.,* 487 U.S. 500 (1988), and its progeny. *See Latiolais,* 951 F.3d at 297-98 (holding Avondale's *Boyle* defense is colorable). Furthermore, Plaintiff's negligence claims relate to the acts performed under color of federal office.

24.

The reasonably precise design specifications established by the federal government mandated the installation of asbestos-containing materials on the Federal Vessels. The Federal Vessels conformed to the specifications mandated by the United States government—including the specifications mandating the use of asbestos—and Avondale, therefore, built the Federal

Vessels using asbestos. The federal government had knowledge of the potential hazards of asbestos-containing materials in the workplace that was equal to or superior to that of Avondale.

25.

Second, Plaintiff's claims against Avondale are barred by the federal defense of derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny. *Yearsley* established that a federal government contractor, performing at the direction and authorization of a federal government officer, is immune from suit based upon performance of the contract. The *Yearsley* doctrine applies here, rendering Avondale immune from suit, because Avondale performed the at-issue acts at the direction of federal government officers acting pursuant to federal government authorization.

26.

Removal under 28 U.S.C. § 1442 does not require the consent of any defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. and Indemnity Co.,* 644 F.2d 1310 (9th Cir. 1981); *Bottos v. Avakian,* 477 F. Supp. 610 (N.D. Ind. 1979), *aff'd*, 723 F.2d 913 (7th Cir. 1983).

27.

Because this Court has federal officer jurisdiction over at least one claim asserted by Plaintiffs, it has supplemental jurisdiction over the entire action. *Savoie,* 817 F.3d at 463; 28 U.S.C. § 1367(a).

28.

With this Notice, Avondale is filing a "copy of all process, pleadings, and orders served upon" it in the State Case. 28 U.S.C. §§ 1446(a), (d). In addition, written notice is being given to all adverse parties, and a copy of this Notice is being filed with the Clerk of the Civil District Court for the Parish of Orleans, State of Louisiana.

10

**ACCORDINGLY**, Avondale gives notice that the proceeding bearing 2023-11053 on the docket of the Civil District Court for the Parish of Orleans, State of Louisiana, is removed to the docket of this Court for trial and determination as provided by law, and asks that this Court enter such orders and issue such process as may be proper to bring before it copies of all records and proceedings in the State Case, and to proceed with this civil action as a matter properly removed.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART MOORE & DANIELS LLC**

/s/ *David M. Melancon*
Gus A. Fritchie (#5751)
Timothy F. Daniels (#16878)
David M. Melancon (#23216)
Alison A. Spindler (#34103)
M. Scott Minyard (#31879)
Kevin Powell (#25324)
Diana J. Masters (#37372)
Alexander R. Saunders (#28753)
Laura Leggette (#35882)
Connor W. Peth (#39499)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone: 504-310-2100
Facsimile: 504-310-2101
E-Mail: IrwinAvondale@irwinllc.com
***Counsel for Huntington Ingalls Incorporated***

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a copy of the foregoing Notice of Removal was filed electronically with the Clerk of Court using the Court's CM/ECF system and a copy sent to all counsel of record by electronic means on the 16th day of November, 2023.

/s/ *David M. Melancon*