UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

PATRICIA BECKER                           CIVIL ACTION NO. 2:23-cv-06900

VERSUS                                    JUDGE DARREL JAMES PAPILLION

HUNTINGTON INGALLS                        MAGISTRATE JUDGE DONNA PHILLIPS
INCORPORATED, ET AL.                      CURRAULT

---

**HUNTINGTON INGALLS INCORPORATED'S
ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S
PETITION FOR DAMAGES AND CROSS-CLAIMS,
THIRD PARTY COMPLAINT, AND JURY DEMAND**

NOW INTO COURT, through undersigned counsel, comes Defendant, Huntington Ingalls

Incorporated (erroneously referred to as Huntington Ingalls Inc.) (f/k/a Northrop Grumman Ship

Systems, Inc., f/k/a Avondale Industries, Inc.) ("Avondale"), who hereby answers Plaintiff's Petition

for Damages ("Petition") as follows:

**<u>ANSWER TO THE PETITION FOR DAMAGES</u>**

I.

The allegations contained in Paragraph 1 of the Petition are denied for lack of sufficient

information to justify belief therein.

II.

Except to admit this Defendant is a foreign corporation registered to do business in

Louisiana, the allegations contained in paragraph 2 of the petition, including all subparts, are denied

for lack of sufficient information to justify belief therein.

III.

The allegations contained in Paragraph 3 (misnumbered in the Petition as 1) are denied for

lack of sufficient information to justify a belief therein.

1

IV.

The allegations contained in Paragraph 4 (misnumbered in the Petition as 2) are denied for lack of sufficient information to justify belief therein.

V.

The allegations contained in Paragraph 5 (misnumbered in the Petition as 3) are denied for lack of sufficient information to justify belief therein.

VI.

The allegations contained in Paragraph 6 (misnumbered in the Petition as 4) are denied for lack of sufficient information to justify belief therein.

VII.

The allegations contained in Paragraph 7 (misnumbered in the Petition as 5) are denied for lack of sufficient information to justify belief therein.

VIII.

The allegations contained in Paragraph 8 (misnumbered in the Petition as 6) are denied to the extent that they are directed against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

IX.

The allegations contained in Paragraph 9 (misnumbered in the Petition as 7) are denied to the extent that they are directed against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

X.

The allegations contained in Paragraph 10 (misnumbered in the Petition as 8) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XI.

The allegations contained in Paragraph 11 (misnumbered in the Petition as 9) are denied for lack of sufficient information to justify belief therein.

XII.

The allegations contained in Paragraph 12 (misnumbered in the Petition as 10) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XIII.

The allegations contained in Paragraph 13 (misnumbered in the Petition as 11) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XIV.

The allegations contained in Paragraph 14 (misnumbered in the Petition as 12) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XV.

The allegations contained in Paragraph 15 (misnumbered in the Petition as 13) are denied for lack of sufficient information to justify belief therein.

XVI.

The allegations contained in Paragraph 16 (misnumbered in the Petition as 14) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XVII.

The allegations contained in Paragraph 17 (misnumbered in the Petition as 15) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XVIII.

The allegations contained in Paragraph 18 (misnumbered in the Petition as 16) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XIX.

The allegations contained in Paragraph 19 (misnumbered in the Petition as 17) are denied for lack of sufficient information to justify belief therein.

XX.

The allegations contained in Paragraph 20, including all subparts, (misnumbered in the Petition as 18) are denied for lack of sufficient information to justify belief therein.

XXI.

The allegations contained in Paragraph 21, including all subparts, (misnumbered in the Petition as 19) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXII.

The allegations contained in Paragraph 22 (misnumbered in the Petition as 20) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXIII.

The allegations contained in Paragraph 23 (misnumbered in the Petition as 21) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXIV.

The allegations contained in Paragraph 24 (misnumbered in the Petition as 22) are denied for lack of sufficient information to justify belief therein.

XXV.

The allegations contained in Paragraph 25, including all subparts, (misnumbered in the Petition as 23) are denied for lack of sufficient information to justify belief therein.

XXVI.

The allegations contained in Paragraph 26, including all subparts, (misnumbered in the Petition as 24) are denied for lack of sufficient information to justify belief therein.

XXVII.

The allegations contained in Paragraph 27 (misnumbered in the Petition as 25) are denied to the extent that they are directed against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXVIII.

The allegations contained in Paragraph 28 (misnumbered in the Petition as 26) are denied to the extent that they are directed against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXIX.

The allegations contained in Paragraph 29 (misnumbered in the Petition as 27) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXX.

The allegations contained in Paragraph 30 (misnumbered in the Petition as 28) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXXI.

The allegations contained in Paragraph 31, including all subparts, (misnumbered in the Petition as 29) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXXII.

The allegations contained in Paragraph 32, including all subparts, (misnumbered in the Petition as 30) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXXIII.

The allegations contained in Paragraph 33 (misnumbered in the Petition as 31) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXXIV.

The allegations contained in Paragraph 34 (misnumbered in the Petition as 32) are denied to the extent that they are direct against this Defendant. Otherwise, the allegations are denied for lack of sufficient information to justify belief therein.

XXXV.

The allegations contained in Paragraph 35, including all subparts, (misnumbered in the Petition as 33) are denied. It being specifically denied that the plaintiff is entitled to the relief requested or to any relief whatsoever.

XXXVI.

The allegations contained in Paragraph 36 (misnumbered in the Petition as 34) are denied for lack of sufficient information to justify belief therein.

## **AFFIRMATIVE DEFENSES**

AND NOW, FURTHER ANSWERING, Defendant, Avondale, asserts the following Affirmative Defenses:

## **FIRST DEFENSE**

Avondale denies any and all allegations of fault or other basis of liability alleged against it. Avondale denies that it is guilty of any wrongdoing with respect to Avondale Shipyard's premises, denies any wrongdoing with respect to Patricia Becker, and denies any wrongdoing with regard to any safety precautions.

7

## SECOND DEFENSE

Plaintiff is barred from prosecuting this action because of Patricia Becker's knowledge of and assumption of the risks and the dangers associated with asbestos.

## THIRD DEFENSE

Avondale avers that the alleged injuries complained of by Plaintiff herein, if any, were caused by the sole and/or concurrent negligence of Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker in failing to properly care for their own protection and safety, and/or to properly utilize safety equipment, thus barring any recovery herein.

## FOURTH DEFENSE

If the alleged injuries complained of by Plaintiff herein, if any, are found to have been caused by acts or omissions of Avondale, then the negligence of Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker, was a contributing cause of the injuries, thus either barring or diminishing Plaintiff's entitlement to recovery.

## FIFTH DEFENSE

The alleged injuries complained of by Plaintiff herein, if any, were caused by acts, omissions, commissions, or conditions, which were the responsibility of persons or entities other than Avondale and for whom Avondale has no legal responsibility.

## SIXTH DEFENSE

The injuries and/or damages alleged by Plaintiff were the result of an act of God or unavoidable accident.

## SEVENTH DEFENSE

Plaintiff's causes of action have prescribed or been extinguished in some other manner.

## EIGHTH DEFENSE

Plaintiff's causes of action are barred by the doctrine of accord and satisfaction.

## NINTH DEFENSE

Plaintiff's causes of action are barred by the doctrine of *Res Judicata.*

## TENTH DEFENSE

Any settlement with, or release of, any manufacturer, distributor, supplier, or vendor of the asbestos-containing products that gave rise to the injuries alleged in this lawsuit extinguishes any secondary or derivative strict liability that may be alleged in this lawsuit.

## ELEVENTH DEFENSE

In the event Plaintiff settles with and/or otherwise release any solidary obligors without reserving his right to proceed against the remaining solidary obligors, then the debt to Plaintiff is discharged as to any remaining solidary obligors pursuant to that version of La. C. C. art. 2203 in effect at the time of the alleged acts and omissions which form the basis of this lawsuit.

## TWELFTH DEFENSE

In the event Plaintiff settles with and/or otherwise releases any person or entities, whether named as defendants or not, then Avondale is entitled to a credit for the virile shares of those settling/released persons or entities.

## THIRTEENTH DEFENSE

Some or all of Plaintiff's claims, injuries, or damages are subject to application of comparative fault that must, according to Louisiana law, be assessed as to all at fault persons, including Patricia Becker.

## FOURTEENTH DEFENSE

Plaintiff's claims are barred by the government contractor immunity defense established in *Boyle v. United Technologies Corporation*.

## FIFTEENTH DEFENSE

Plaintiff's claims are barred by derivative sovereign immunity as set forth in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), and its progeny.

## SIXTEENTH DEFENSE

Avondale herein affirmatively pleads that should an agreement or contract govern any claims by or against Avondale, then Avondale reserves its right to enforce any and all arbitration clauses or provisions and specifically does not waive the enforcement of any such clauses or provisions.

## SEVENTEENTH DEFENSE

Avondale herein affirmatively pleads that should an agreement or contract govern any claims by or against Avondale, then Avondale reserves its right to enforce any and all clauses or provisions and specifically does not waive the enforcement of any such clauses or provisions.

## CROSS-CLAIMS AND THIRD-PARTY COMPLAINT

1.

Plaintiff, Patricia Becker, filed a Petition for Damages seeking damages for injuries allegedly sustained as a result of her alleged asbestos exposure.

2.

Avondale has been named as a defendant by the Plaintiff in this case.

3.

Avondale denies any and all liability in this case.

4.

Alternatively, while denying any and all liability, Avondale is entitled to virile share contributions from and/or application of comparative fault of the Cross-Claim and Third Party Defendants for any and all amounts for which it may be cast in judgment and virile share credits or set-offs with respect to all Cross Claim and Third Party Defendants who may settle Plaintiff's claims.

5.

Named as **Cross-Claim Defendants** are the following:

1. **Anco Insulations, Inc.;**

2. **Chevron Phillips Chemical Company, LP;**

3. **Eagle, Inc.; and,**

4. **Taylor-Seidenbach, Inc.**

Made **Third-Party Defendants** herein are:

A.   **BAYER CROPSCIENCE, INC**., successor to Rhone Poulenc AG Company, formally Amchem Products, Inc., formerly Benjamin Foster Company;

B.   **FOSTER WHEELER, LLC**, formally Foster Wheeler Corporation;

C.   **GENERAL ELECTRIC COMPANY**;

D.   **PARAMOUNT GLOBAL**, f/k/a ViacomCBS, Inc., f/k/a CBS Corporation, a Delaware Corporation, f/k/a Viacom, Inc., successor by merger with CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation;

E.   **INTERNATIONAL PAPER COMPANY** (Individually and as successor by merger to Champion International Corporation and U.S. Plywood);

F.   **HOPEMAN BROTHERS, INC.;**

G.   **LIBERTY MUTUAL INSURANCE CO.,** as insurer of Wayne Manufacturing Co.;

H.   **UNIROYAL INC.**, a/k/a Uniroyal Holdings, Inc.;

I.    **THE MANVILLE PERSONAL INJURY TRUST**, as successor-in-interest to the Johns-Manville Corporation, a trust organized and existing under the laws of the State of New York, and administered through the Claims Resolution Management Corporation, a subsidiary of the Manville Personal Injury Settlement Trust, a company organized and existing under the laws of the Commonwealth of Virginia; and

J.    **TRINITY INDUSTRIES, INC.**, as successor to Gretna Machine & Iron Works, Inc.

6.

Avondale adopts herein by reference as though set forth *in extenso* all allegations against the Cross-Claim Defendants as asserted in Plaintiff's Petition for Damages insofar as they assert the fault, negligence, strict liability and other bases for liability, *not including intentional tort*, against the Cross-Claim Defendants. Avondale further alleges that Plaintiff's allegations against the Cross-Claim Defendants are equally applicable to the fault, negligence, strict liability, and other bases for liability against the Third-Party Defendants and therefore adopts and specifically asserts, as if set forth *in extenso*, those allegations against the foregoing Third-Party Defendants. Avondale affirmatively disavows any allegations asserted against the Cross-Claim Defendants based on intentional tort.

7.

Plaintiff alleges that she contracted lung cancer from secondary exposure to asbestos from the work clothing of spouses and family members who worked at various jobsites of family members in Louisiana.

8.

Cross-Claim and Third-Party Defendants are all miners, manufacturers, sellers, distributors, suppliers, installers, and/or users of asbestos products, and/or are insurers of miners, manufacturers, sellers, distributors, suppliers, installers, and/or users of asbestos products, and/or were engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos

products, or representing themselves as manufacturers of asbestos products, and/or were commercial suppliers and/or professional vendors of asbestos or asbestos-containing products, which were expected to and did reach the job sites and workplaces of Plaintiff's spouses and family members.

9.

The products mined, manufactured, distributed, supplied, sold, and/or used by the Cross-Claim and Third-Party Defendants were defective, unreasonably dangerous, and unreasonably dangerous *per se*. Plaintiff was an intended and/or foreseeable user and/or bystander exposed to these products.  These defects include, without limitation, the following:

a.    the mining, manufacture, sale, supply, distribution and use of products that are unreasonably dangerous or unreasonably dangerous *per se*;

b.    the mining, manufacture, sale, supply, distribution and use of products that possess inherent and known properties that make them unreasonably dangerous by presenting potential for causing serious injury and death to those who would be exposed to them;

c.    lack of warning or of sufficient warning of the hazards these products would present in the course of their normal, foreseeable manufacture use or intended use;

d.    lack of safety instruction or of sufficient safety instruction for eliminating or reducing the health risks associated with the intended ultimate use of these products;

e.    failure to inspect these products to assure sufficiency and adequacy of warnings and safety cautions;

f.    failure to test or adequately test these products for defects or hazards that they could present to the intended or foreseeable users;

g.    failure to truthfully report or adequately report the results of product testing, and medical studies associated with foreseeable hazards of exposure to these products by intended or foreseeable users, bystanders and others;

h.    failure to properly design these products where the nature of the product did not require use of asbestos mineral or where alternate, equally suitable substances were readily available;

i.    defects in the composition and construction of these products;

j.    failure to recall these products mined, manufactured, sold, supplied and distributed;

k.    failure to properly package these products so that they could be safely transported, handled, stored, or disposed; and

l.    over-warranting the safety of these products that were manufactured, sold or supplied by the Cross-Claim and Third-Party Defendants.

10.

The fault and defective products of the Cross-Claim and Third-Party Defendants are the proximate cause of the alleged injury and damages, if any, as set forth in the Petition.

11.

The Cross-Claim and Third-Party Defendants are liable for negligence, fault, strict liability and strict products liability in connection with the manufacturing, distributing, design and/or installation of asbestos-containing products which were defective in design, unreasonably dangerous *per* se, and for failure to warn Plaintiff concerning asbestos hazards posed by their products.

12.

Third-Party Defendant, Bayer CropScience, Inc. (successor to Rhone Poulenc AG Company, formally Amchem Products, Inc., formerly Benjamin Foster Company) ("Amchem"), was a manufacturer, seller, distributor, and/or supplier of asbestos-containing products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos-containing products, including but not limited to Benjamin Foster 81-27 fibrous adhesive.

13.

Amchem manufactured and sold asbestos-containing products, including but not limited to Benjamin Foster 81-27 fibrous adhesive, used at Avondale and other locations where Plaintiff's family members allegedly worked, which product was defective, unreasonably dangerous and unreasonably dangerous *per se.* Amchem is strictly liable and was negligent as set forth above.

14.

Amchem was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Plaintiff, and others similarly situated, could be injured as a result of this type of exposure, but negligently failed to institute protective measures and/or warn Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker and/or Avondale of the potential health hazards from exposure to asbestos, and was negligent in allegedly allowing Plaintiff to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiff's alleged injuries, including her alleged lung cancer, if any.

15.

As a manufacturer of asbestos products, Amchem knew or should have known that exposing Plaintiff, and those similarly situated, to asbestos would cause injury and, despite that knowledge, Amchem did not provide proper instructions and/or warnings to Avondale and others.

16.

At all times relevant hereto, asbestos-containing products and materials manufactured by Amchem were used at Avondale, pursuant to requirements in government contracts and regulations, and used by Avondale in accordance with all federal health and safety precautions. If Plaintiff was exposed to some level of asbestos-containing dust from products used at Avondale, which is denied, Amchem is liable for negligence, fault, professional vendor liability, and strict liability and strict

products liability in connection with the manufacturing, design, and distributing of asbestos-containing products that were defective in design, unreasonably dangerous, and unreasonably dangerous *per se*, and for failure to warn purchasers, users, and others such as Plaintiff and/or Avondale. Amchem is therefore liable for Plaintiff's alleged injuries, including her alleged lung cancer, if any.

17.

Third-Party Defendant, Foster Wheeler LLC ("Foster Wheeler"), was a manufacturer, seller, distributor, and/or supplier of asbestos-containing equipment and products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos-containing products, including but not limited to asbestos-containing marine boilers and components.

18.

Foster Wheeler manufactured and sold asbestos-containing marine boilers and component materials used at Avondale and other locations where Plaintiff's spouses and family members worked, which equipment and products were defective, unreasonably dangerous and unreasonably dangerous *per se*. Foster Wheeler is strictly liable and was negligent as set forth above.

19.

Foster Wheeler was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Plaintiff, and others similarly situated, could be injured as a result of this type of exposure, but negligently failed to institute protective measures and/or warn Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker, and/or Avondale of the potential health hazards from exposure to asbestos, and was negligent in allegedly

allowing Plaintiff to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiff's alleged injuries, including her alleged lung cancer, if any.

20.

As a manufacturer of asbestos products, Foster Wheeler knew or should have known that exposing Plaintiff, and those similarly situated, to asbestos would cause injury and, despite that knowledge, Foster Wheeler did not provide proper instructions and/or warnings to Avondale and others.

21.

At all times relevant hereto, asbestos-containing products and materials manufactured by Foster Wheeler were used at Avondale, pursuant to requirements in government contracts and regulations, and used by Avondale in accordance with all federal health and safety precautions. If Plaintiff was exposed to some level of asbestos-containing dust from products used at Avondale, which is denied, Foster Wheeler is liable for negligence, fault, professional vendor liability, and strict liability and strict products liability in connection with the manufacturing, design, and distributing of asbestos-containing products that were defective in design, unreasonably dangerous, and unreasonably dangerous *per se*, and for failure to warn purchasers, users, and others such as Plaintiff and/or Avondale. Foster Wheeler is therefore liable for Plaintiff's alleged injuries, including her alleged lung cancer, if any.

22.

Third-Party Defendants, General Electric Company ("General Electric") and Paramount Global, f/k/a ViacomCBS, Inc., f/k/a CBS Corporation, a Delaware Corporation, f/k/a Viacom, Inc., successor by merger with CBS Corporation, a Pennsylvania Corporation, f/k/a Westinghouse Electric Corporation ("Westinghouse") were manufacturers of asbestos-containing products,

component parts, and/or equipment, including steam turbines. Products, materials, component parts and/or equipment manufactured by General Electric and Westinghouse were used at Avondale. If Plaintiff was exposed to some level of dust from products used at Avondale, which is denied, General Electric and Westinghouse are liable for negligence, fault, professional vendor liability, and strict liability and strict products liability in connection with the manufacturing, distributing and design of asbestos-containing products used at Avondale which were defective in design, unreasonably dangerous, unreasonably dangerous *per se*, and for failure to warn purchasers, users, and others such as Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker, and/or Avondale. General Electric and Westinghouse are, therefore, liable for Plaintiff's alleged injuries, if any.

23.

General Electric and Westinghouse knew or should have known that exposing Plaintiff, and those similarly situated, to asbestos would cause injury and, despite that knowledge, General Electric and Westinghouse did not provide proper instructions and/or warnings to Avondale and others for which General Electric and Westinghouse are liable.

24.

General Electric and Westinghouse were aware or should have been aware of the dangers presented by exposure to their asbestos products and that Plaintiff and others similarly situated could be injured as a result of this type of exposure, but negligently failed to institute protective measures and to warn Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker, and/or Avondale of the potential health hazards from exposure to asbestos and was negligent in allegedly allowing Plaintiff to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiff's alleged injuries, including her alleged lung cancer, if any.

25.

Further, Westinghouse was a manufacturer, seller, distributor, supplier and/or user of asbestos-containing products, including Fire Retardant Decorative Micarta ("FRDM" or "Micarta"), and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos-containing products and/or was a commercial supplier and/or professional vendor of asbestos-containing products.

26.

Westinghouse was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Patricia Becker, Don Tuberville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker and others similarly situated, could be injured as a result of this type of exposure, but negligently failed to institute protective measures and/or warn Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker, and/or Avondale of the potential health hazards from exposure to asbestos and was negligent in allegedly allowing Plaintiff to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiff's alleged injuries, including her alleged lung cancer, if any.

27.

As a manufacturer, seller, distributor, supplier, and/or user of asbestos products, Westinghouse knew or should have known that exposing Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker and those similarly situated, to asbestos would cause injury and, despite that knowledge, Westinghouse did not provide proper instructions and/or warnings to Avondale and others, for which Westinghouse is liable pursuant to Louisiana Civil Code article 2315.

28.

At all times relevant hereto, Westinghouse manufactured, sold, distributed, and/or supplied asbestos-containing products, materials, and/or component parts, including asbestos-containing FRDM, which was used by Defendant Wayne Manufacturing Co. ("Wayne Manufacturing") in its manufacture of wallboard sold and installed by Hopeman on vessels at Avondale. If Patricia Becker, Don Tuberville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker were exposed to some level of asbestos-containing dust from products used at Avondale, which is denied, Westinghouse is liable for negligence, fault, strict products liability and strict liability in connection with the design, manufacturing, and distributing of asbestos-containing products, which were defective in design, unreasonably dangerous, and unreasonably dangerous *per se*, and for failure to warn purchasers, users, by-standers, and others, such as this defendant, Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker concerning asbestos hazards posed by its products. Westinghouse is therefore liable for Plaintiff's alleged injuries, including her alleged lung cancer, if any.

29.

International Paper Company is the successor to U.S. Plywood. U.S. Plywood was instrumental in the development of Westinghouse's FRDM and served as its sole distributor from the time it was developed in approximately 1956 until sometime in the early to mid-1970s. Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker were exposed to FRDM, which was cut and installed by Hopeman on vessels at Avondale, and said exposure was a substantial contributing cause of Plaintiff's injuries, including her alleged lung cancer, if any. International Paper Company is strictly liable and was negligent as set forth herein.

30.

As a seller, distributor, and/or user of asbestos products, U.S. Plywood knew or should have known that exposing Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker and those similarly situated, to asbestos would cause injury and, despite that knowledge, U.S. Plywood did not provide proper instructions and/or warnings to Avondale and others for which U.S. Plywood is liable pursuant to Louisiana Civil Code article 2315.

31.

U.S. Plywood was instrumental in the development of Westinghouse's asbestos-containing FRDM. At all times relevant hereto, U.S. Plywood served as the sole distributor of FRDM, which was used by Wayne Manufacturing in its manufacture of wallboard sold and installed by Hopeman on vessels at Avondale. If Patricia Becker, Don Tuberville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker were exposed to some level of asbestos-containing dust from products used at Avondale, which is denied, U.S. Plywood is liable for negligence, fault, strict products liability and strict liability in connection with the design, distribution and supply of asbestos-containing products which were defective in design, unreasonably dangerous, unreasonably dangerous *per se*, and for failure to warn purchasers, users, by-standers, and others, such as Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker and/or Avondale, concerning asbestos hazards posed by its products. U.S. Plywood is therefore liable for Plaintiff's alleged injuries, including her alleged lung cancer, if any.

32.

Hopeman Brothers, Inc. ("Hopeman Brothers") was a subcontractor and performed joiner work aboard vessels under construction at Avondale Shipyard. In performing this work, Hopeman Brothers' employees installed asbestos-containing wallboard and other asbestos-containing products

without warning or proper precautions. If Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, and/or Gary Becker were exposed to some level of dust from products used at Avondale during their employment (which is denied), said exposure was caused by the fault, negligence, and strict liability of Hopeman Brothers.

33.

Wayne Manufacturing Company ("Wayne Manufacturing") was a manufacturer, seller, distributor, supplier, and/or user of asbestos-containing products and was engaged in or materially participated in the business of manufacturing or facilitating the manufacturing of asbestos-containing products and/or was a commercial supplier and/or professional vendor of asbestos-containing products.

34.

Wayne Manufacturing manufactured wallboard sold and/or supplied by Hopeman Brothers, Inc. at Avondale, which product was defective, unreasonably dangerous, and unreasonably dangerous *per se.* Wayne Manufacturing is strictly liable and was negligent as set forth above.

35.

At all material times herein, Liberty Mutual Insurance Company ("Liberty Mutual") was the liability insurer of Wayne Manufacturing, which is now defunct. Liberty Mutual is, therefore, responsible for the liability of Wayne Manufacturing Company. Defendant hereby asserts a direct action under La. R.S. 22:1269 against Liberty Mutual for the liability of Wayne Manufacturing.

36.

Third-Party Defendant, Uniroyal Holding, Inc. ("Uniroyal") was a manufacturer, seller, distributor, supplier, and/or user of asbestos products, including asbestos-containing cloth, tape, yarn, and adhesives, and was engaged in or materially participated in the business of manufacturing

or facilitating the manufacturing of asbestos products, and/or was a commercial supplier and/or professional vendor of asbestos-containing products.

37.

Uniroyal was aware or should have been aware of the dangers presented by exposure to its asbestos products and that Plaintiff, and others similarly situated, could be injured as a result of this type of exposure, but negligently failed to institute protective measures and/or warn Patricia Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker, and/or Avondale of the potential health hazards from exposure to asbestos, and was negligent in allegedly allowing Plaintiff to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiff's alleged injuries, including her alleged lung cancer, if any.

38.

As a manufacturer of asbestos products, Uniroyal knew or should have known that exposing Plaintiff, and those similarly situated, to asbestos would cause injury and, despite that knowledge, Uniroyal did not provide proper instructions and/or warnings to Avondale and others.

39.

At all times relevant hereto, asbestos-containing products and materials manufactured by Uniroyal were used at Avondale, pursuant to requirements in government contracts and regulations, and used by Avondale in accordance with all federal health and safety precautions. If Plaintiff was exposed to some level of asbestos-containing dust from products used at Avondale, which is denied, Uniroyal Holding, Inc. is liable for negligence, fault, professional vendor liability, and strict liability and strict products liability in connection with the manufacturing, design, and distributing of asbestos-containing products that were defective in design, unreasonably dangerous, and unreasonably dangerous *per se*, and for failure to warn purchasers, users, and others such as Patricia

Becker, Don Turbeville, Warren Terrebonne, Herman Becker, Alan Becker, Gary Becker, and/or Avondale. Uniroyal Holding, Inc. is therefore liable for Plaintiff's alleged injuries, including her alleged lung cancer, if any.

40.

The Manville Personal Injury Settlement Trust ("Trust") has succeeded to the liabilities of Johns-Manville Corporation ("Johns-Manville") and is the entity subject to claims for contribution or for establishing credits or offsets with respect to the asbestos-related liabilities of Johns-Manville asserted herein. Insofar as Louisiana virile share liability law applies to the Plaintiff's claims in this case, then Johns-Manville, by and through its respective trust, is brought into this action for the purpose of having its fault allocated in accordance with same. This third-party complaint is being asserted against the Trust in accordance with the Trust Distribution Process ("TDP") for the sole purpose of listing the Trust on a verdict form or otherwise as necessary to ensure that any verdict reduction in respect of the Johns-Manville (or Trust) liability share is made pursuant to applicable law. Avondale affirmatively disclaims any claim for relief beyond that which is provided in the TDP. Further, out of an abundance of caution and insofar as it may be required, Avondale waives any requirement that the Manville Personal Injury Settlement Trust appear, answer, be subject to discovery as a party, or be subject to default or other trial court process or procedure; and Avondale stipulates that it will not move for a continuance of trial on grounds that the Manville Personal Injury Settlement Trust was not required to appear and answer.

41.

Johns-Manville manufactured asbestos-containing thermal insulation products and other asbestos-containing materials and products. Johns-Manville is liable for negligence, fault, strict products liability and strict liability in connection with the manufacturing, distributing and design of

24

asbestos-containing products which were defective in design and unreasonably dangerous *per se*, and for failure to warn Plaintiff concerning asbestos hazards posed by its products.

42.

Johns-Manville was aware or should have been aware of the dangers presented by exposure to its asbestos products, and that persons such as Plaintiff could be injured as a result of this exposure, but negligently failed to institute protective measures and to warn Plaintiff of the potential dangers to their health from exposure to asbestos and was negligent in allowing Plaintiff to be exposed to unsafe levels of asbestos, which exposures caused or contributed to Plaintiff's alleged injuries, including her alleged asbestos-related lung cancer, if any.

43.

As a manufacturer of asbestos products, Johns-Manville knew or should have known that exposing Plaintiff and those similarly situated, to asbestos would cause injury and, despite that knowledge, Johns-Manville did not provide proper instructions and/or warnings for which Johns-Manville is liable pursuant to La. C.C. art. 2315.

44.

Trinity Industries, Inc. is the successor in interest to the liabilities of Gretna Machine & Iron Works, Inc. During relevant years, Don Turbeville was an employee of Gretna Machine & Iron Works and/or invitee on the premises and/or property of Gretna Machine & Iron Works, Inc. where he was exposed to asbestos from working with and/or around asbestos-containing materials and/or equipment. These exposures are attributable to the negligence of Gretna Machine & Iron Works, Inc.

45.

Gretna Machine & Iron Works, Inc. was, or should have been, aware of the dangerous condition presented by exposure to asbestos, but failed to warn Patricia Becker and/or Don

Turbeville of the dangers of working with asbestos. However, Gretna Machine & Iron Works, Inc. negligently failed to protect Don Turbeville from asbestos exposure by failing to provide him a safe work environment and failing to take the necessary precautions. The foregoing acts of negligence resulted in Patricia Becker's secondary exposure to asbestos and alleged injuries, if any.

46.

In addition to the above acts of negligence, Gretna Machine & Iron Works, Inc. is strictly liable for failing to properly handle the asbestos in its care, custody, or control which resulted in Plaintiff's injuries, if any.

47.

As an employer, premise owner, and/or user of asbestos-containing products, Gretna Machine & Iron Works, Inc. knew or should have known that exposing Plaintiff and Don Turbeville, and those similarly situated, to asbestos would cause injury and, despite that knowledge, Gretna Machine & Iron Works, Inc. did not provide proper instructions, procedures, and warnings. For these reasons, Trinity Industries, Inc. is liable pursuant to Louisiana C.C. art. 2315.

## **JURY DEMAND**

Defendant, Avondale, prays for a trial by jury on all issues.

WHEREFORE, Avondale prays that its Answer, Affirmative Defenses, Cross-Claims, Third-Party Complaint, and Jury Demand be filed, and that Cross-Claim and Third-Party Defendants be duly served and cited, and that after due proceedings are had that there be judgment in favor of Avondale dismissing Plaintiff's claims, with prejudice, and at Plaintiff's cost. In the alternative, should Avondale be found liable to Plaintiff, which is denied, Avondale prays that there be further judgment over and against Cross-Claim and Third-Party Defendants for virile share contributions from all Cross-Claim and Third-Party Defendants for any and all amounts owed to Plaintiff, for

virile share credits or offsets with respect to all entities with whom Plaintiff has or may settle, and for all costs of these proceedings. Avondale further prays for all other equitable and legal relief as the nature of the case may permit and as the law may allow.

Respectfully submitted,

**IRWIN FRITCHIE URQUHART MOORE & DANIELS LLC**

 /s/ *David M. Melancon*
Gus A. Fritchie (#5751)
Timothy F. Daniels (#16878)
David M. Melancon (#23216)
Kevin Powell (#25324)
Alexander R. Saunders (#28753)
Alison A. Spindler (#34103)
Laura A. Leggette (#35882)
Diana J. Masters (#37372)
Connor W. Peth (#39499)
400 Poydras Street, Suite 2700
New Orleans, Louisiana 70130
Telephone:  504-310-2100
Facsimile:  504-310-2101
E-Mail:  IrwinAvondale@irwinllc.com
***Counsel for Huntington Ingalls Incorporated***